UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ECHOTA C. WOLFCLAN,

          Plaintiff,

v.

PIERCE COUNTY, *et al.*,

          Defendants.

Case No. C23-5399-TSZ-SKV

ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFF'S MOTION TO COMPEL DISCOVERY

## I.  INTRODUCTION

This is a civil rights action proceeding under 42 U.S.C. § 1983.  This matter comes before the Court on Defendants' motion for issuance of a protective order and for entry of a model protective order related to Plaintiff's requests for production 19 and 20 (Dkt. 116), and on Plaintiff's motion to compel discovery (Dkt. 118).  The Court, having considered the parties' motions, the arguments presented by the parties at oral argument, and the balance of the record, denies Defendants' motion for issuance of protective orders and grants in part Plaintiff's motion to compel.

## II.  BACKGROUND

Plaintiff Echota Wolfclan initiated this action on May 2, 2023, with the submission of a *pro se* civil rights complaint alleging constitutional violations related to plumbing and sewer

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 1

issues at the Pierce County Jail ("the Jail"). *See* Dkt. 1-1. Mr. Wolfclan included in his complaint a request for certification as a class action and identified several additional Jail inmates as class members. *See id.*

On November 21, 2023, counsel was appointed to represent Mr. Wolfclan in this case (Dkt. 84), and on March 1, 2024, Plaintiff, through counsel, filed an amended class action complaint (Dkt. 96). The amended pleading alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, sections 3 and 14 of the Washington Constitution, arising out of unsafe and unsanitary plumbing conditions at the Jail, including regular backflushing and flooding of raw sewage. *See* Dkt. 96 at 15-17. Plaintiff identified as Defendants in his amended pleading Pierce County, the Pierce County Council, Sheriff Ed Troyer, Chief of Corrections Patti Jackson, Jail Captain Matthew Dobson, and Jail Sergeant Anthony Mastandrea. *Id*. at 3.

Plaintiff includes in his amended pleading class allegations under Fed. R. Civ. P. 23(b)(2), and seeks certification of a class defined as follows:

> All detainees held in the Pierce County Jail, Cell Block 3 North A from April 8, 2023, until the present, and any other cell blocks having unremedied plumbing defects leading to the same, similar, or worse living conditions, and all detainees who will be held in those cell[] blocks in the future ("the Plaintiff Class").

Dkt. 96 at 13. Plaintiff seeks declaratory and injunctive relief on behalf of himself and the proposed class, and he seeks compensatory and punitive damages only on behalf of himself. *Id.* at 17-18.

Plaintiff served his first set of interrogatories and requests for production on Defendants on May 30, 2024, and those discovery requests seek documents regarding Mr. Wolfclan's experiences in unit 3 North A ("3NA") of the Jail, as well as documents regarding sewage issues

in other parts of the Jail. On June 13, 2024, the Court entered the parties' Electronically Stored Information ("ESI") Agreement and Order. Dkt. 110. In the ensuing months, multiple disputes have arisen between the parties concerning the scope of discovery and the ESI review and collection process, which they have been unable to resolve through the mandated meet and confer process.

On August 22, 2024, Defendants filed their motion for protective order in which they seek issuance of an order limiting Plaintiff's first set of interrogatories and requests for production and striking duplicate discovery requests. *See* Dkt. 116 at 1. Defendants also seek entry of a proposed model protective order related to Plaintiff's requests for production 19 and 20. *See id*. On August 27, 2024, Plaintiff filed his pending motion to compel. Dkt. 118. Plaintiff requests therein an order compelling Defendants to apply specific search terms, and to review and produce all non-privileged ESI held by specific individual custodians from January 1, 2014, to the present that is responsive to his discovery requests, regardless of whether it pertains to Plaintiff or to cell block 3NA. *See id.* at 1.

The Court held oral argument on October 1, 2024, related to the parties' pending discovery motions. *See* Dkt. 133. The Court has considered the arguments presented by the parties at the recent hearing, in addition to all briefing submitted by the parties in relation to their pending motions (Dkts. 116-19, 125-131), in reaching the conclusions set forth below.

### III.  DISCUSSION

#### A.  Applicable Legal Standards

"The Federal Rules of Civil Procedure allow for broad discovery in civil actions." *Everest Indem. Ins. Co. v. QBE Ins. Corp.*, 980 F. Supp. 2d 1273, 1278 (W.D. Wash. 2013). Rule 26 of the Federal Rules of Civil Procedure governs the production of discovery. Pursuant

to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Information need not be admissible in order to be discoverable. *Id*.

"Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). "'The court should and ordinarily does interpret "relevant" very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.12 (1978) (quoting 4 J. Moore, Federal Practice ¶ 26.56 [1], p. 26-131 n. 34 (2d ed. 1976)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc.*, 406 F.3d at 635.

A party from whom discovery is sought may move for a protective order, and a court may, upon a showing of good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden, or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Even if "good cause" exists, the court must balance the interests in allowing discovery against the burdens to the parties or nonparties. *Id.* at 425.

B.     Analysis

The primary issues in dispute here concern the permissible scope of discovery, compliance with the ESI Agreement, and the ESI review and collection process.

*1.     Scope of Discovery*

Plaintiffs seek information and documents pertaining to plumbing defects in any location in the Jail, and relating to any detainee of the Jail, between January 1, 2014, and the present. Dkt. 118 at 12. Defendants seek to limit discovery to the 3NA section of the Jail and to a time frame commensurate with Mr. Wolfclan's confinement in 3NA from April 8, 2023 to May 9, 2023. *See* Dkt. 116; Dkt. 125 at 1-2, 4-6. Defendants argue that Mr. Wolflcan, who is no longer confined at the Jail, lacks standing to seek discovery for alleged harm in other locations of the Jail beyond 3NA, and that he has no individual standing for injunctive or declaratory relief. *See* Dkt. 125 at 1-2, 4-6.

Plaintiff argues that broader discovery regarding knowledge of sewage backflow throughout the Jail over an extended period of time, or a pattern of ignoring detainee complaints about sewage backflow, is relevant to Plaintiff's individual claims of deliberate indifference. Dkt. 118 at 10. Plaintiff further argues that Defendants cannot foreclose discovery related to class certification, and he avers that "Defendants are in the sole possession of all or nearly all documents and information relevant to the claims in this action, including information necessary to meet the requirements of Federal Rule of Civil Procedure 23 to certify a class." *Id*. at 11.

As to Plaintiff's individual claims, the Court observes that Pierce County is among the Defendants identified in Plaintiff's amended complaint. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A Plaintiff must also demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Id*. at 404. Liability may also exist where there is a "policy of inaction and

such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Discovery pertaining to plumbing defects throughout the Jail over a period of years is relevant to questions concerning Pierce County's liability in this matter. The Court notes, in particular, a report prepared by an outside entity in October 2014, and submitted by Defendants in support of their response to Plaintiff's motion to compel, that includes a review of the toilet and plumbing fixtures in the main jail. Dkt. 126, Ex. 1. The report indicates that existing pipe fittings allow "waste from one bowl to occasionally flush into the opposite bowl." *Id.*, Ex. 1 at 2. In addition, Plaintiff submitted in support of his motion to compel a copy of an email to Corrections Chief Jackson, dated February 3, 2016, regarding sewage smells in another part of the Jail that were causing health and safety concerns. Dkt. 130, Ex. A. The email to Chief Jackson references another email that appears to indicate that concerns regarding sewage smells at the Jail date back as far as 2012. *See id.* The Court is satisfied that discovery related to plumbing issues throughout the main jail dating back to 2014 is relevant to Plaintiff's individual claims and will be permitted.

As to Plaintiff's alleged class claims, the Court observes that just as courts have broad discretion to control discovery, they also have discretion "to control the class certification process, and [w]hether or not discovery will be permitted. . . ." *Lieberg v. Red Robin Gourmet Burgers, Inc.*, 2016 WL 1588381, at *1 (W.D. Wash. Apr. 20, 2016) (citation omitted). And the Ninth Circuit has held that though discovery may not always be necessary to the determination of whether an action may be maintained as a class action, "the better and more advisable practice . . . is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

The Ninth Circuit explained in *Doninger* that "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Id*. Given the numerous other cases filed in this Court by former and current Jail inmates alleging sewage problems in various units of the Jail, the Court is satisfied that it is appropriate to permit discovery with respect to the alleged class claims.[1]

For the foregoing reasons, Defendants' motion for a protective order limiting discovery to the 3NA section of the Jail for times commensurate with Plaintiff's most recent period of confinement in that unit is denied, and Plaintiff's motion to compel discovery related to plumbing issues throughout the main Jail from January 1, 2014, to the present is granted. Defendants shall supplement their responses to Plaintiff's first set of interrogatories and requests for production consistent with this Order.

### 2. ESI Agreement

Both sides argue that the opposing side has refused to comply with the ESI Agreement. Points of contention include identification of custodians, data sources, search terms, and search methodology.

#### a. Custodians and Data Sources

Defendants identified in their ESI disclosure three Pierce County departments as custodians. *See* Dkt. 119, Ex. E. Plaintiff maintains that identification of County departments does not comport with the ESI agreement which requires identification of individuals likely to

---

[1] Plaintiff represented in his motion papers, and confirmed at oral argument, that he intends to seek leave to amend his complaint in the near future to add a second named Plaintiff. These representations provide additional justification for allowing broader discovery with respect to the alleged class claims.

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 7

have discoverable ESI in their possession, custody, or control. *See* Dkt. 118 at 4, 12. Plaintiff has identified in his proposed order granting his motion to compel a list of custodians, which includes the individual Defendants named in this action and others. *See* Dkt. 118-1 at 2. While Defendants agree that the named Defendants are appropriate custodians, they appear to take issue with other individuals included on Plaintiff's list on the grounds that Plaintiff has not established that these individuals have relevant information. Dkt. 119, Ex. G. Defendants remain firm in their position that the naming of County departments as custodians is appropriate, *see id.*, and maintained at oral argument that Plaintiff's claims do not lend themselves to identification of more specific custodians.

The Court is not persuaded that appropriate individual custodians cannot be identified, and it appears evident that a failure to do so will unnecessarily expand the breadth of the ESI searches conducted by Defendants and, thus, the number of documents retrieved. Defendants shall therefore provide Plaintiff with a list of individuals, besides Defendants themselves, who are likely to have discoverable ESI within 21 days of the entry of this Order. Relevant custodians may include, for example, grievance coordinators or other individuals who supervise units or departments within the Jail to whom concerns regarding plumbing defects may have been relayed.

Defendants shall also disclose to Plaintiff all data sources likely to contain responsive and discoverable information as contemplated by sections (B)(2)-(4) and (C)(2)(a)(i) of the ESI Agreement within 21 days of entry of this Order. Defendants' initial disclosure of "Email/Outlook boxes" and Microsoft Teams Chats does not comport with the ESI Agreement's requirements for disclosure of data sources.

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 8

b.       Search Terms and Search Methodology

There is significant disagreement between the parties about the appropriate search terms to be applied in this case and the appropriate search methodology to be employed.  As the Court advised the parties at oral argument, the Court does not want to micro-manage this issue and instead expects the parties to negotiate in good faith about the appropriate terms.  The Court concurs with Plaintiff's assessment that Defendants' list of proposed search terms as set forth in the ESI disclosure (*see* Dkt. 119, Ex. E) is not nearly exhaustive enough.  The Court also agrees that some of Plaintiff's proposed search terms, *i.e.*, "Inhumane", "Unsanitary", "Sanitary", "Clean*", "Condition*" (*see* Dkt. 119, Ex. F at 2-3), by themselves are overbroad.  The parties shall meet and confer within 14 days of entry of this order to negotiate and agree upon a set of search terms with the expectation that Defendants, consistent with the ESI agreement, will then run the search terms against identified data sources and produce a hit report.

A particular point of contention between the parties as it relates to the search terms is Defendants' insistence that Plaintiff identify a separate set of search terms for each of his 32 requests for production. *See* Dkt. 118 at 5; Dkt. 129 at 4-5.  Plaintiff advocates for creating a "document universe" using a comprehensive set of search terms to be run across all custodians and databases.  *See* dkt. 118 at 5-6, 12-13; Dkt. 129 at 4-6.  While creation of unique sets of search terms for individual requests for production may, in some instances, be necessary to promote the efficient collection of ESI, the Court can perceive no benefit to such an approach in the circumstances of this case.  Thus, once the parties reach agreement on the search terms, and all custodians and data sources are appropriately identified, Defendants shall run the search terms across the ESI of each identified custodian or database.  Defendants shall thereafter provide a hit

report showing specific results for each search term as to the data held by each custodian or stored in each database.

Should the hit report contain a document count of 200,000 or fewer total hits, Defendants shall conduct a review of the document universe established by the agreed upon term search, and produce any non-privileged documents responsive to Plaintiff's requests for production 1-3, 5-7, 9, 11, 14-17, 20-24, 26-30, or 32, on a rolling basis to be substantially completed within 10 weeks of the entry of this Order, and subject to the entry of an appropriate protective order governing confidential information that may be applicable to any discoverable documents. Alternatively, Defendants may choose to disclose to Plaintiff search terms intended to segregate potentially privileged ESI and produce the remainder without a manual review.

Should the hit report contain more than 200,000 unique items, Defendants shall either comply with the process described above or, in the alternative, show cause why reviewing this document universe and producing non-privileged, responsive documents would be unduly burdensome.

### 3. Jail Act

Another point of contention is Plaintiff's request that Defendants produce records of other Jail inmates, records which are protected by the City and County Jails Act ("the Jail Act"), RCW 70.48.100. Plaintiff seeks an order from this Court allowing Defendants to produce the records of other Jail inmates in accordance with RCW 70.48.100(2)(c). Dkt. 118 at 14-15. Defendants take the position that no such order is warranted because the information being sought has no bearing on this case. Dkt. 125 at 9. Defendants contend as well that there is no provision in the statute for the defense to waive the privacy protections afforded to non-party inmates. *Id*. Defendants, however, cite to no authority which would preclude this Court from

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 10

entering the order requested by Plaintiff and, for the reasons discussed above as to the scope of permissible discovery, the Court deems such an order appropriate.  As Plaintiff correctly points out, any privacy concerns related to such materials can be addressed through a protective order.

The Court therefore grants Plaintiff's request and, in accordance with RCW 70.48.100(2)(C), Orders that Defendants produce the records of other Jail inmates responsive to any of Plaintiff's interrogatories or requests for production of documents.  The Court further Orders that Defendants reproduce Plaintiff's Jail records removing all redactions made pursuant to the Jail Act.

4. *Protective Order Re: Requests for Production 19 and 20*

Defendants request that the Court enter a proposed model protective order related to Plaintiff's requests for production 19 and 20.  Dkt. 116 at 1, 9-10.  According to Defendants, the requested documents include a map or layout of the Jail and Jail design documents, and entry of a protective order identifying those materials as Attorney Eyes Only ("AEO") is appropriate.  *Id*. at 9.  Plaintiff does not dispute that Defendants may designate as AEO any maps, or other documents in their planned production that they believe to be extremely sensitive.  *See* Dkt. 127 at 14-15.  Rather, Plaintiff expresses concern that the manner in which Defendants' proposed protective order is drafted will prevent Plaintiff from viewing any other documents Defendants may produce pursuant to requests for production 19 and 20 that are marked merely "confidential" and not AEO.  *Id*. at 15.

The Court is not inclined to enter piecemeal protective orders pertaining to specific productions of materials, but instead favors a standard protective order that will apply to all discovery produced during the course of this action.  Defendants' requests for a protective order pertaining specifically to Plaintiff's requests for production 19 and 20 (Dkt. 116) is therefore

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 11

denied.  Should the parties agree upon and submit a blanket protective order, it should include a provision that allows Plaintiff's to review "confidential" documents when "reasonably necessary for this litigation."

### 5. Other Arguments

Defendants argue in their motion for protective order that Plaintiff's discovery requests are duplicative or overlap with other discovery requests, and that they contain vague general terms.  *See* Dkt. 116 at 4, 8.  While Defendants are correct that there is overlap in some of Plaintiff's requests for production and, indeed, substantial overlap in some instances, this should not prove unduly burdensome to Defendants given the Court's conclusion that the appropriate way for collection of ESI to proceed in this action is through application of a single set of search terms across all custodians and databases that will create a universe of documents responsive to all of Plaintiff's requests for production.  To the extent Defendants complain that Plaintiff's discovery requests contain vague general terms, the Court is confident that the parties can address such concerns through the meet and confer process.

### C. Costs and Fees

Plaintiff requests in his motion to compel that the Court assess costs and fees against Defendants as their position with respect to the issues raised in the motion to compel is not substantially justified.  Dkt. 118.  While it does appear that Defendants have exhibited unnecessary resistance to some of Plaintiff's discovery requests and suggestions as to how discovery might most efficiently proceed, the Court is not inclined to assess fees and costs at this time, but is open to doing so, if warranted, in the future.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 12

(1) Defendants' motion for a protective order limiting discovery and striking duplicate discovery requests (Dkt. 116) is DENIED.  Defendants' motion for entry of their proposed protective order related to requests for production 19 and 20 (*Id.*) is also DENIED without prejudice to the parties filing a model protective order governing all discovery.

(2) Plaintiff's motion to compel production of documents (Dkt. 118) is GRANTED in part.  In particular, Plaintiff's motion is granted to the extent it asks the Court to compel production of documents responsive to Plaintiff's requests for production 1-3, 5-7, 9, 11, 14-17, 20-24, 26-30, and 32, for the period of January 1, 2014, through the present, and pertaining to any section of the Jail, not just 3NA.  Defendants shall supplement their responses to Plaintiff's first set of interrogatories and requests for production within 21 days of the entry of this Order.

(3) Plaintiff's motion to compel (Dkt. 118) is further GRANTED to the extent Plaintiff seeks to compel Defendants to specifically identify custodians and data sources, as required by the ESI Agreement, and to employ the methodology suggested by Plaintiff which requires only a single set of search terms to be run across the ESI of each custodian or data source identified by Defendants.  Defendants shall provide Plaintiff with a list of individuals, besides Defendants themselves, who are likely to have discoverable ESI within 21 days of the entry of this Order.  Defendants shall also disclose to Plaintiff all data sources likely to contain responsive and discoverable information as contemplated by sections (B)(2)-(4) and (C)(2)(a)(i) of the ESI Agreement within 21 days of entry of this Order.

(4) Plaintiff's motion to compel (Dkt. 118) is DENIED to the extent it seeks an Order directing that Defendants run the search terms proposed by Plaintiff in his June 27, 2024, correspondence across the ESI of identified custodians or data sources.  The proposed search terms suggested by each side need refinement, and the Court is confident that with the directives

regarding the appropriate scope of discovery and the methodology to be employed set forth in this Order the parties will effectively negotiate a set of agreed upon search terms. The parties shall meet and confer within 14 days of entry of this order to negotiate and agree upon a set of search terms.

(5) Pursuant to RCW 70.48.100(2)(C), Defendants are directed to produce records of other Jail inmates responsive to any of Plaintiff's interrogatories and requests for production of documents. Defendants are further directed to reproduce Plaintiff's Jail records, removing all redactions made pursuant to the Jail Act.

(6) Plaintiff's request that costs and fees be assessed (Dkt. 118 at 15) is DENIED.

(7) The Clerk is directed to send copies of this Order to all counsel of record and to the Honorable Thomas S. Zilly.

DATED this 9th day of October, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER RE: DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY - 14