THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ECHOTA C. WOLFCLAN and ZAKERY BONDS, on behalf of themselves and other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE COUNTY, et al.,<br><br>Defendants. | Case No. 23-cv-5399-TSZ-SKV<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR INDIVIDUALIZED CLAIMS FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## I.     INTRODUCTION

1.     This is a class action civil rights lawsuit brought by two pre-trial detainees on behalf of similarly situated detainees housed in cell blocks that Pierce County officials and senior Pierce County Jail Correctional Officers know have inhumane and unsanitary conditions, including regular backflushing and flooding of raw sewage, causing injury and illness to those housed there.

2.     Despite objective evidence creating a substantial risk of serious bodily harm caused by unsafe and unsanitary plumbing conditions at the Pierce County Jail, these officials have refused to remove the serious plumbing issues, even though they have been long known about and previously identified in a report going back to 2014; nor have these officials moved the detainees out of the unsafe and offending locations of the jail. Instead, they have continued to house inmates, including some of Pierce County's most vulnerable, mentally ill detainees, in these cell blocks

**THIRD AMENDED COMPLAINT** - 1
No. 23-cv-05399-TSZ-SKV

because detainees are unlikely to have the resources and/or mental capacity to challenge Pierce County.

3.      The Defendants' actions violate the Fourteenth Amendment to the United States Constitution and Article I, section 3 of the Washington Constitution, as well as Defendants' duty to keep detainees in health and safety. Defendants will continue to violate the rights of detainees in their care absent injunctive and declaratory relief as requested below.

4.      Plaintiffs seek to certify a class of all detainees who are presently or have at any time been held in any cell blocks at Pierce County Jail in having unremedied plumbing defects leading to unsanitary living conditions, and all detainees who will be held those cells blocks in the future.

5.      On behalf of all members of the class, Mr. Wolfclan and Mr. Bonds claim declaratory and injunctive relief.

6.      On behalf of themselves only, Mr. Wolfclan and Mr. Bonds claim damages.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983, in that Defendants, under color of state law, have deprived Plaintiffs of their rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

8.      This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

9.      Venue is proper in this district under 28 U.S.C. § 1391 because at least one of the named Defendants resides in this district and all Defendants are residents of Washington State, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**THIRD AMENDED COMPLAINT** - 2
No. 23-cv-05399-TSZ-SKV

10.     Moreover, pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary and proper relief.

### III.     PARTIES

11.     Plaintiff Echota C. Wolfclan (formerly known as Justin Allen Davey) is a mentally ill individual who was a pre-trial detainee at Pierce County Jail from April 8, 2023, to August 15, 2023. Mr. Wolfclan has been the Defendant in 18 Pierce County criminal cases since 2004, often resulting in him being detained in Pierce County Jail.

12.     Plaintiff Zakery Bonds is a pre-trial detainee at Pierce County Jail. Mr. Bonds has been detained at Pierce County Jail since March 16, 2022.

13.     Defendant, Pierce County and the Pierce County Council, in their official capacity.

14.     Defendant, Pierce County Sheriff Ed Troyer, in their individual and official capacity.

15.     Defendant, Pierce County Chief of Correction Patti Jackson in their individual and official capacity.

16.     Defendant, Captain Matthew Dobson, Deputy Corrections Office, in their individual and official capacity.

17.     Defendant, Sergeant Anthony Mastandrea, Deputy Corrections Office, in their individual and official capacity.

18.     All of the Defendants are state actors for all purposes and acted under the color of state law at all relevant times.

### IV.     LEGAL BACKGROUND

19.     "Such conditions as poor plumbing and sewage systems rise to the level of a constitutional violation where they appear in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being." *Jones v. City and County of San Francisco*, 976 F.Supp. 896, 910 (N.D. Cal. 2000) (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (internal quotation marks omitted)).

**THIRD AMENDED COMPLAINT** - 3
No. 23-cv-05399-TSZ-SKV

20.     "In contrast to post-conviction prisoners, pretrial detainees have the right to be free from punishment under the Fourteenth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979).

21.     Prison officials have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).

22.     To establish a violation of this duty, a prisoner must show that he was subjected to an objectively serious deprivation that amounts to a denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

23.     In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

24.     To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

25.     A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

26.     A § 1983  claim may be asserted against a government entity under *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L.Ed. 2d 412 (1989), for failure to implement adequate policies, standards, and training or under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), for having unconstitutional policies, customs, or practices.

1

## V.    FACTUAL ALLEGATIONS

2

***Mr. Wolfclan's Detainment in Cell Block 3 North A From April 2023 to May 2023***

3

27.    On April 8, 2023, Mr. Wolfclan was transferred from Pierce County Jail general

4

population cell block 4 South B to "Beautiful Minds" cell block 3 North A.

5

28.    As soon as he arrived at cell 6-7 in 3 North A, Mr. Wolfclan recognized the sewage

6

problem he complained about during a prior detainment in Pierce County persisted, and he was

7

doomed to another term in these unsanitary, inhumane conditions.

8

29.    The toilet in Cell 6-7 was filled with raw sewage emitting noxious sewer gases, and

9

his cellmate was sleeping or otherwise unconscious. The noxious gases gave Mr. Wolfclan an

10

immediate headache and anxiety at the realization that he would be stuck in the inhumane

11

conditions he suffered in 2020.

12

30.    Returning to the unit after two years, Mr. Wolfclan reports that the conditions have

13

worsened since 2020, with sewage odor being as much as seven times worse. He witnessed his

14

cellmate throwing up, suffering diarrhea, and being incapable of eating for as many as four days.

15

He witnessed another resident who was moved after their eyes swelled shut and a resident who

16

was put on an IV due to being unable to eat in the conditions. The detainee whose eyes swelled

17

shut was later moved to solitary confinement because after he was returned to cell block 3 North

18

A he told guards he was suicidal due to the conditions.

19

31.    While detained in cell block 3 North A, Mr. Wolfclan was placed on medication

20

for headaches, allergies, upset stomach, coughing, mucus, and other respiratory problems caused

21

by the disgusting conditions that Pierce County refuses to remedy.

22

32.    On April 8, 2023, Mr. Wolfclan immediately requested cleaning supplies, but just

23

like the 7 months he spent in this cell block in 2020, his request was denied since there was then

24

still no set policy for supplying inmates with cleaning supplies.

25

26

**THIRD AMENDED COMPLAINT** - 5
No. 23-cv-05399-TSZ-SKV

33.    On the morning of April 9, 2023, Mr. Wolfclan woke to unsurprisingly find that the toilet had overflowed, and his cell floor was covered in raw sewage—conditions he was forced to eat his breakfast in.

34.    Mr. Wolfclan also noticed that what appears to be black mold is falling out of a vent in the unit 3 North A showers. And that the cell block 3 North A floors are covered in black grime related to the raw sewage flooding the cells. The black grime sticks to detainees' socks causing it to spread to their blankets and bed.

35.    When one cell flushes, the adjoining cell's toilet backflushes raw sewage into the other cell. On at least four occasions this resulted in raw sewage backflushing onto Mr. Wolfclan's anus and genitals.

36.    As a result, Mr. Wolfclan developed an open sore caused by exposure to raw sewage.

37.    Mr. Wolfclan requested a medical check related to the sores, and correctional officers mislabeled the request as for an STD check.

38.    Mr. Wolfclan reports that the conditions are so bad that Corrections Officers working under/with Captain Matthew Dobson and Sergeant Anthony Mastandrea are bribing unit workers with candy bars to pour soapy water down the 10-11 sewage drainage pipes, even though this does not fix the problem.

39.    The noxious sewer gases are everywhere in the 3 North A cell block, including the cells and dayroom. The smell persists all day, every day. There is no option for the detainees to get away from it, making it difficult to eat or breathe with the ever-present, overwhelming stink.

40.    Mr. Wolfclan and other inmates he has witnessed attempted to cope with the conditions by pacing in their cells, or through prayer. In both cases, they are forced to walk or even prostrate themselves on the floors that are persistently contaminated with raw sewage, and which they do not have sanitation supplies to clean.

41.    Mr. Wolfclan was baptized in a Christian congregation at the Champions Center Church on January 29, 2023.

42.    As part of Mr. Wolfclan's religious practice he regularly prostrates himself to God, placing his forehead to the ground in a form of kissing reverence to his savior's feet that he understands to be consistent with Revelations 14:1 which references "144,000 who had his name and his Father's name written on their foreheads."

43.    Due to his authentic religious beliefs and the inhumane conditions he was placed in, Mr. Wolfclan was forced to kiss the raw sewage-infested floors of his cell.

### *Mr. Wolfclan's Grievance Attempts*

44.    On April 8, 2023, after being denied access to cleaning equipment, Mr. Wolfclan requested to submit a grievance, as he had in 2020, but was informed by cluster officers working under/with Captain Matthew Dobson, and Sergeant Anthony Mastandrea that they no longer hand out grievances for the unsanitary conditions caused by the long-term plumbing issues.

45.    Throughout his detainment in Cell Block 3 North A Mr. Wolfclan made regular requests to enter grievances related to the inhumane conditions which were denied.

46.    On information and belief, the decision to refuse an opportunity to file a grievance was to prevent Mr. Wolfclan and other detainees from submitting and exhausting their grievances before pursuing a lawsuit.

47.    On April 9, 2023, Mr. Wolfclan attempted to electronically file for a grievance using a kiosk but the machine was frozen. When he questioned officers working under/with Captain Matthew Dobson and Sergeant Anthony Mastandrea about the kiosk being frozen, they explained the kiosk is updating every time someone wants to submit a grievance.

48.    On information and belief, the kiosk was deliberately not repaired to prevent Mr. Wolfclan and other detainees from submitting their grievances before pursuing a lawsuit.

1

***Retaliation Related to Grievance Attempts and Lawsuit***

2    49.    After making daily complaints about the inhumane conditions, Mr. Wolfclan was

3 threatened that if he continued, he would be disciplined. When he continued, he was placed on cell

4 lockdown and later ordered to stick his own finger down his throat while observing correctional

5 officers laughed.

6    50.    After filing his initial complaint on May 2, 2023, on May 6, 2023, Mr. Wolfclan

7 was transferred to a suicide observation cell in cell block 3 North A.

8    51.    On information and belief, one Sergent Miller working under/with Captain

9 Matthew Dobson and Sergeant Anthony Mastandrea ordered the cell Mr. Wolfclan was transferred

10 to not to be cleaned before his transfer.

11    52.    The suicide observation cell Mr. Wolfclan was transferred to was covered in feces

12 when he arrived and suffered from back flushing issues similar to the 3 North A cell block.

13    53.    On information and belief, the transfer to a feces-covered, segregated, suicide

14 observation cell was in retaliation to Mr. Wolfclan complaining about conditions and filing his

15 initial complaint in this matter.

16    54.    On May 9, 2023, Mr. Wolfclan agreed to be transferred to the general population

17 to avoid further exposure to the feces-covered, segregated, suicide observation cell.

18    55.    On information and belief, knowing Mr. Wolfclan suffered from schizophrenia and

19 extreme anxiety disorder, and knowing he was both physically and sexually abused as a child—as

20 disclosed in his Mental Health Evaluation—Defendants intentionally transferred Mr. Wolfclan to

21 a cell with a convicted violent child rapist.

22    ***Mr. Wolfclan's Prior Experiences with the "Beautiful Minds" Cell Block 3 North A***

23    56.    This was not Mr. Wolfclan's first time being housed in the 3 North A cell block.

24 Approximately three years earlier, while also classified as a mentally ill pre-trial detainee, he was

25 transferred to the same cell block on May 12, 2020—that transfer was due to his good behavior

26 reclassifying him from a level 2 closed custody detainee to a level 3 high/medium custody detainee.

**THIRD AMENDED COMPLAINT** - 8
No. 23-cv-05399-TSZ-SKV

57.     During the 2020 period, for seven months, Mr. Wolfclan (then named Justin Allen Davey) suffered raw sewage backing up in his cell's toilet, noxious fumes filling his cell, and the toilet overflowing 10-15 times a day—flooding the cell floor with raw sewage. Mr. Wolfclan requested PPI and sanitation equipment throughout these seven months and was only granted sanitation equipment twice. Due to persistent denials, he was forced to clean his cell with his own shirt and water from the cell's sink. And he was still served breakfast in these unsanitary, inhumane conditions, which often prevented him from eating. He complained about the conditions at every formal inspection (conducted once every three weeks) and submitted numerous grievances. *See Davey v. Pierce Cty. Council*, No. C21-05068-LK-SKV, 2022 U.S. Dist. LEXIS 125871 (W.D. Wash. Mar. 10, 2022).

58.     On information and belief, namely conversations with Pierce County Jail maintenance personnel, the current unsanitary condition is the result of a 30-year-old mistake in plumbing—a mistake that Pierce County will not fund to correct. According to the same maintenance worker, the 3 North A cell block is the worst because the plumbing is directly connected to the 4th floor. Accordingly, 3 North A units not only suffer from issues with adjacent cells plumbing, but the sewage from the 4th floor drains down into 3 North A Cells. However, as described below, the problem is present throughout many other areas of the jail.

### *Mr. Bonds' Detainment in Multiple Cell Blocks From March 2022 to Present*

59.     Mr. Bonds was booked into Pierce County Jail as a pre-trial detainee on March 16, 2022. From approximately March 19, 2022 through April 7, 2022, Mr. Bonds was housed in cell block 3 South E.

60.     Upon entering his cell, Mr. Bonds observed the toilet bowl was full to the brim with raw sewage. Mr. Bonds observed that every time someone in a nearby cell flushed their toilet, the water and feces in Mr. Bonds' toilet would rise and fall. The toilet seat and the handles to the sink also had raw sewage on them. Mr. Bonds also smelled ammonia from dry urine.

61. Throughout the time Mr. Bonds was housed in cell block 3 South E, he continually experienced raw sewage backflowing into his toilet and overflowing onto the floor of his cell when other detainees would flush the toilets in their cells. At times, this occurred in the middle of the night, and Mr. Bonds would awaken suddenly to his toilet making gurgling noises and overflowing into his cell.

62. The raw sewage in Mr. Bonds' toilet emitted noxious gases and caused Mr. Bonds to experience nausea and headaches.

63. On multiple occasions, when Mr. Bonds was seated on his toilet, the backflushing would occur resulting in raw sewage touching his anus and genitals.

64. On several occasions, Mr. Bonds had to use his clothing to clean up the raw sewage that overflowed onto the floor of his cell.

65. From approximately April 7, 2022 through April 15, 2022, Mr. Bonds was moved to cell block 4 South C. Mr. Bonds continually experienced the same disgusting conditions in this unit of the jail as he had experienced in cell block 3 South E.

66. On multiple occasions, Mr. Bonds saw other inmates flush their toilets and immediately thereafter would see raw sewage come up through his toilet.

67. From approximately April 15, 2022 through June 19, 2022, Mr. Bonds was housed in cell block 4 North B.

68. The cells in 4 North B do not have toilets in them. However, Mr. Bonds noticed that drain at the entrance of his cell was emitting noxious gases. Mr. Bonds experienced severe headaches as a result of the noxious gases.

69. Upon information and belief, the named Defendants knew this was a widespread, systemic, and pervasive problem throughout the jail but did not fix it.

70. From approximately June 20, 2022 through April 2, 2023, Mr. Bonds was housed in cell block 3 East B. This cell block is an open dorm setting with two toilets and a shower for the detainees to share.

**THIRD AMENDED COMPLAINT** - 10
No. 23-cv-05399-TSZ-SKV

71.     Multiple times per week, while showering, Mr. Bonds witnessed raw sewage come up out of the shower drains.

72.     Mr. Bonds also continually witnessed raw sewage come up through the drains near the toilets. As a result, Mr. Bonds' feet were exposed to the raw sewage.

73.     The toilets in 3 East B are on the other side of a wall from a walkway used by Correctional Officers. When Mr. Bonds used either of the toilets, upon flushing, he could hear water splash onto the walkway on the other side of the wall. Mr. Bonds also heard this happen when other detainees used the toilets.

74.     One day while housed in cell block 3 East B, Mr. Bonds witnessed maintenance personnel run into the cell block and yell, "stop flushing, stop flushing!" Mr. Bonds then heard the maintenance personnel say that raw sewage was flowing into a judge's chambers that was located under the cell block.

75.     From approximately April 2, 2023 through April 6, 2023, Mr. Bonds was housed in cell block 3 West B. Mr. Bonds experienced all of the same conditions there that he had previously experienced in cell block 3 South E.

76.     Mr. Bonds currently resides in cell block 4 North C. There are no toilets in the cells in this unit. When Mr. Bonds or another detainee needs to use the toilet, they have to press a button to notify the guards. Mr. Bonds has witnessed the guards get angry with the detainees about asking to go the toilet and will force them to hold in their urine for long period of time. Mr. Bonds has witnessed guards threaten to search the detainees' cells if they push the button in order to deter detainees from asking to use the toilets.

77.     Some of the detainees in 3 South E have rice bags to urinate into because the guards will not allow them to use the toilets when they need to.

78.     Mr. Bonds has also witnessed that when detainees have asked for grievances for not being allowed to use the toilet, the requests are denied.

***Other Detainees' Experiences with the Same Pervasive Issues Throughout the Jail***

**THIRD AMENDED COMPLAINT** - 11
No. 23-cv-05399-TSZ-SKV

79.    Mr. Wolfclan and Mr. Bonds' experience is not unique. There are over two dozen active cases in the Western District of Washington filed by other detainees in Pierce County Jail regarding the same unacceptable conditions, which have been documented as occurring throughout the main jail.

80.    The allegations in those lawsuits show the problem persists in at least the following cell blocks throughout the jail: 3 North A, 4 West A, 5 West A, 3 West B, 4 South C, 3 South C, 3 West C, 4 West C, SCF, 4 North B, 3 South E, 3 East B, 3 South B,  3 South A, 3 West A, 3 South F,  4 North A, 3 North C, 3 South, 5 West B, 4 West B, 3 North B, 3 West B, 4 South A, 4 North, 3 South, 3 West, 4 South B, and 3 East A.

### *Dangers of Sewar Gas*

81.    As explained above, Mr. Wolfclan, Mr. Bonds, and others detained in cell blocks throughout Pierce County Jail are not only subjected to raw sewage flooding their cells, but ever-present gasses escaping from the sewage system and filling every corner of the cell blocks.

82.    Sewage gas is a complex mixture of toxic and nontoxic gases that result from feces, urine, household cleaners, and other industrial waste breaking down and reacting in the sewage system. Toxic components of these sewer gases can include hydrogen sulfide, ammonia, methane, carbon dioxide, sulfur dioxide, and nitrous oxides.

83.    Exposure to sewer gas is known to result in fatigue, headaches, nausea, vomiting, dizziness, poor memory, poor concentration, and other inflammation. In high concentrations, sewage gas is noxious and can even lead to loss of consciousness.

84.    Mr. Wolfclan, Mr. Bonds, and others detained at Pierce County Jail have experienced and have been treated for symptoms including headaches, allergies, upset stomach, coughing, mucus, and other respiratory issues.

*Defendants are Deliberately Indifferent to The Substantial Risk of Serious Harm to Detainees Housed in Pierce County Jail*

85.     Pierce County, Pierce County Council, Sheriff Ed Troyer, Chief of Correction Patti Jackson, Captain Matthew Dobson, and Sergeant Anthony Mastandrea have all previously been named in Mr. Wolfclan's 2020 lawsuit which detailed the inhumane conditions in cell block 3 North A and explained how those conditions created a substantial risk of serious harm to any detainee housed there including that the conditions created a serious risk of "transmission of an infectious illness, a breeding grounds for disease, and that the conditions were exacerbating my mental illness." The increased risk to mentally ill inmates is particularly concerning since defendants have elected to use this cell block exclusively for the mentally ill. *See Davey v. Pierce Cty. Council Case*, No. 3:21-cv-05068-LK-SKV, Dkt. 81 filed 7/15/2022.

86.     In 2014 an engineering evaluation was conducted on the jail's and related facilities' sewage and plumbing. A report, issued on October 1, 2014, found that the jail's plumbing was not in compliance with the current code standards and that the adjacent unit's toilets are connected and have deteriorated to the extent that when one is flushed, the other overflows.

87.     As early as February 3, 2016, Chief of Correction Patti Jackson and members of the Sheriff department were informed that methane/sewer smell in the Pierce County Jail was an "ongoing chronic health and safety issue" that was affecting staff (reporting "staff getting sick, reports of headaches, involuntary gag reflexes etc.") and inmates. They were warned that they need "a permanent fix to the health and safety issues otherwise we will soon be getting L&I or grievance complaints." They were told in no uncertain terms that "[t]his ongoing health and safety condition is just unacceptable."

88.     Being on notice of the serious risk inherent to these conditions, Pierce County, Pierce County Council, Sheriff Ed Troyer, Chief of Correction Patti Jackson, Captain Matthew Dobson, and Sergeant Anthony Mastandrea were deliberately indifferent to the substantial risk of serious harm to inmates housed in affected cell blocks by failing to remedy the illegal and inhumane conditions, or in the alternative, move the detainees to another location.

**THIRD AMENDED COMPLAINT** - 13
No. 23-cv-05399-TSZ-SKV

89.     On information or belief, despite knowing the conditions in the affected cell blocks are dangerous, Defendants elected to, and continue to house detainees in these cell blocks.

90.     Defendants' deliberate indifference to detainees' health and safety has been ongoing due to Pierce County's refusal to fund remediation of improper plumbing as well as the Pierce County Sheriff, Pierce County Chief of Correction, and Pierce County Jail correction officers' participation in continuing to house detainees—some recognized as some of Pierce County's most vulnerable under RCW Chapter 10.77—in these conditions.

91.     Captain Dobson and Seargeant Mastandrea are aware of the deteriorating conditions of the affected cell blocks—with even their own deputies complaining—including Mr. Wolfclan overhearing Deputy CO Maulin complaining "Fuck it smells like shit in here... they need to fix this shit" while doing a unit walk; with Deputy COs Stevens and Ramos having unit workers dump water down the sewage pipes (despite this practice not working); Deputy CO Mrs. Earp spraying air freshener throughout the unit; and Deputy CO White unlocking and entering an empty cell to flush a toilet that had backflushed for nearly 12 days.

92.     On April 26, 2023, during "formal inspection," Mr. Wolfclan and 21 other detainees in Cell Block 3 North A again notified prison-guard staff including Sergeant Mastandrea and two other officers working with Captain Dobson of the inhumane conditions in the cell block and asked them to inform Sheriff Ed Troyer, the County Counsel, and the on-site medical and health personal to move the mental health unit out of cell block 3 North A.

### *Mr. Wolfclan's and Mr. Bonds' Status as Pre-Trial Detainees*

93.     Plaintiff, Mr. Wolfclan, was incarcerated at the Pierce County Jail from April 4, 2023, until August 15, 2023, at which time he was transferred to Western State Hospital to have his competency restored. At all relevant times, Mr. Wolfclan was a pre-trial detainee who was involuntarily detained at Pierce County Jail.

94.     On April 5, 2023, Mr. Wolfclan was arraigned and found incompetent to proceed by Pierce County Superior Court and ordered to be evaluated under RCW Chapter 10.77.

**THIRD AMENDED COMPLAINT** - 14
No. 23-cv-05399-TSZ-SKV

95.     On April 6, 2023, Mr. Wolfclan was arraigned and found incompetent to proceed by Pierce County District Court and ordered for further evaluation under RCW Chapter 10.77.

96.     On April 8, 2023, Mr. Wolfclan was placed in the so-called "Beautiful Minds" housing unit at the Pierce County Jail, 3 North A Cell 6-7, after being victimized in general population housing.

97.     On April 10, 2023, a forensic psychologist again found Mr. Wolfclan incompetent to proceed under RCW Chapter 10.77.

98.     On March 16, 2022, Mr. Bonds was booked into Pierce County Jail pending trial. Mr. Bonds is currently, and at all relevant times was, a pre-trial detainee who was involuntarily detained at Pierce County Jail.

### *Civil Rights Class Allegations*

99.     The treatment to which Plaintiffs and the class they represent have been subjected were performed pursuant to the acts or omissions of Defendants acting under the color of state law.

100.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an order declaring that Defendants' treatment of Plaintiffs resulting from the acts or omissions of Defendants is unlawful. Plaintiffs bring this action on behalf of all persons similarly situated, pursuant to Fed. R. of Civ. P. 23(b)(2). Plaintiffs seek certification of a class defined as follows:

> **All detainees who are presently or have at any time been held in any cell blocks at Pierce County Jail having unremedied plumbing defects leading to unsanitary living conditions, and all detainees who will be held those cells blocks in the future ("the Plaintiff Class").**

101.    Pursuant to Fed. R. of Civ. P. 23(a), the members of the class are so numerous that joinder of all members is impractical. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe, and thereupon allege that at least 30 individuals who have been housed across multiple cell blocks in Pierce County Jail have filed lawsuits alleging the same

**THIRD AMENDED COMPLAINT** - 15
No. 23-cv-05399-TSZ-SKV

unconstitutional living conditions, and there are likely hundreds more affected class members who have been housed in cell blocks within Pierce County Jail having unremedied plumbing defects leading to the same, similar, or worse living conditions, and that there will be thousands of additional class members in the future if the plumbing defects are not fixed.

102.    Pursuant to Fed. R. of Civ. P. 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

- Whether the conditions detainees suffered violates the Due Process Clause of the Fourteenth Amendment

- Whether the conditions detainees suffered constitute a violation of Article I, section 3 of the Washington Constitution

- Whether the conditions detainees suffered constitute tortious failure to maintain safe and healthful living conditions.

103.    Pursuant to Fed. R. of Civ. P. 23(a), Plaintiffs' claims are typical of the class they seek to represent. Without due process Plaintiffs were subjected to an objectively serious deprivation of safe, sanitary, and humane conditions that amount to a denial of the minimal civilized measure of life's necessities. Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class. Plaintiffs' claims arose because of Defendants' acts or omissions. Plaintiffs' claims for declaratory and injunctive relief are based upon the same legal theories as the claims of the proposed class members.

104.    Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this action against Defendants. Counsel knows of no conflicts among any members of the class, or between counsel and any members of the class. The named Plaintiffs and class counsel will fairly and adequately represent the interests of the class.

**THIRD AMENDED COMPLAINT** - 16
No. 23-cv-05399-TSZ-SKV

105.    Class-wide declaratory and injunctive relief are appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class as a whole.

***Notice of Tort Allegations to Local Government in Compliance with State Law***

106.    In compliance with RCW 4.96.020, on or around February 29, 2024, Plaintiff Wolfclan submitted a tort claim form for damages along with any other information required by law to state a claim for tortious conduct against a local government entity and its agent.

107.    In compliance with RCW 4.96.020, on or around October 11, 2024, Plaintiff Bonds submitted a tort claim form for damages along with any other information required by law to state a claim for tortious conduct against a local government entity and its agent.

VI.    CLAIMS FOR RELIEF

**COUNT I – 42 U.S.C. § 1983**
**Violations of Rights Secured by the Due Process Clause of the Fourteenth Amendment**

108.    Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

109.    Title 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

110.    At all relevant times Plaintiffs were pre-trial detainees.

111.    At all relevant times Defendants acted under color of state law.

112.    Plaintiffs were subjected to an objectively serious deprivation of safe, sanitary, and humane conditions that amounts to a denial of "the minimal civilized measure of life's necessities."

113.    Defendants' acts and omissions caused Plaintiffs' injuries.

114.    Defendant Pierce County maintained, and still maintains, unconstitutional customs, practices, and/or policies – including policies of inaction – that were the moving force behind the violations of Plaintiffs' constitutional rights.

**THIRD AMENDED COMPLAINT** - 17
No. 23-cv-05399-TSZ-SKV

**COUNT II – Violation of Washington State Due Process Clause**

115.    Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

116.    Defendants, acting under color and authority of state law, deprived Plaintiffs of safe, sanitary, and humane conditions in violation of the Washington State Constitution Article 1 Section 3.

117.    Without due process Plaintiffs were subjected to an objectively serious deprivation of safe, sanitary, and humane conditions that amount to a denial of the minimal civilized measure of life's necessities.

118.    Defendants' acts and omissions caused Plaintiffs' injuries.

**COUNT III – Tortious Failure to Keep Health and Safety**

119.    Plaintiffs Wolfclan and Bonds hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

120.    Defendants have a duty to ensure detainees in their custody, control, or under their government authority, are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.

121.    Defendants breached that duty by housing detainees in cells with toilets continuously leaking sewage gases into the confined space and repeatedly flooding cells with raw sewage.

122.    Defendants separately breached that duty by failing to provide detainees with PPI equipment and cleaning supplies to sanitize their cells after sewage flooded their cells.

123.    This breach, which exposed Plaintiffs Wolfclan and Bonds to raw sewage, and noxious gases, and prevented Plaintiffs Wolfclan and Bonds from effectively cleaning the raw sewage, was the direct cause of physical and mental harm to Plaintiffs Wolfclan and Bonds during their detention.

124.    This breach is the proximate cause of the physical and mental harm caused to Plaintiffs Wolfclan and Bonds during their detention.

125.    Plaintiffs Wolfclan and Bonds suffered damages to their physical and mental health.

VII.    PRAYER FOR RELIEF

A.    Certify this as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) as detailed above.

B.    Adjudge and declare that the actions, customs, conditions, policies, and practices described in this Complaint violate the rights of Plaintiffs and the Plaintiff Class they seek to represent under the federal Constitution, and other applicable laws.

C.    Preliminarily and permanently enjoin the Defendants their agents, employees, and all persons acting in concert with them from subjecting Plaintiffs and the Plaintiff Class to the actions, customs, conditions, policies, and practices described in this Complaint.

D.    Appoint a Special Master pursuant to Fed. R. Civ. P. 53 to oversee the Defendants' compliance with any orders the Court will issue in the future and order the Defendants to provide all appropriate and necessary funds to compensate the Special Master for their duties.

E.    Retain jurisdiction of this case until such time as Defendants have fully complied with all orders of the Court, and there is reasonable assurance that Defendants will continue to comply in the future with these orders.

F.    Award the named Plaintiffs compensatory and punitive damages pursuant to 42 U.S.C § 1983 and applicable state laws.

G.    Award Plaintiffs and the Plaintiff Class their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute or court rule.

H.    Award Plaintiffs and the Plaintiff Class such other and further relief as justice may require.

I.    Compensatory and punitive damages in an amount to be determined at trial.

**THIRD AMENDED COMPLAINT** - 19
No. 23-cv-05399-TSZ-SKV

Dated this 13th day of February 2025.

STOEL RIVES LLP

/s/ Alissa Harris
Scott Pritchard, WSBA No. 50761
Michael P. Rubin, WSBA No. 59598
Alissa Harris, WSBA No. 59368
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206-624-0900
Facsimile: 206-386-7500
Email: scott.pritchard@stoel.com
        michael.rubin@stoel.com
        ali.harris@stoel.com

Lowe Graham Jones PLLC

/s/ Mark P. Walters
Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Telephone: 206-381-3300
Facsimile: 206-381-3301
Email: walters@lowegrahamjones.com
        west@lowegrahamjones.com

THE LAW OFFICES OF
LISA R. ELLIOTT
Lisa Elliott, WSBA 41803
11120 NE 2nd St, Suite 100
Bellevue, Washington 98004
(253) 514-7866
lmarieroybal@gmail.com

*Attorneys for Plaintiffs Echota Wolfclan and Zakery Bonds*

**THIRD AMENDED COMPLAINT** - 20
No. 23-cv-05399-TSZ-SKV

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 13, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NCF) to all parties in the case who are registered users of the CM/ECF System. The NEF for the foregoing specifically identifies recipients of electronic notice.

Dated: February 13, 2025

STOEL RIVES LLP

By: */s/ Alissa Harris*
    Alissa Harris, WSBA No. 59368

**THIRD AMENDED COMPLAINT** - 21
No. 23-cv-05399-TSZ-SKV